The first case we'll hear today is Wang Finn v. Attorney General, No. 16-4316. Mr. Mosley. May it please the Court, I'm Thomas Mosley, counsel for Mr. Wang. Judge Jacares, we'd like to request three minutes for rebuttal. That'll be granted. The Board of Immigration Appeals, to which the government and I agree, gets no deference in construction of criminal statutes of error in grafting on a materiality requirement in 7 U.S.C. 6BA-1B, the specific statutory provision for which Mr. Wang entered his guilty plea pursuant to a negotiated agreement. This specific provision literally contains no requirement of materiality. Congress knew how to impose materiality. It didn't do so here. When you say it's just not there, how come multiple other courts of appeals seem to think it's there? Well, Judge Jordan, I don't think they do, quite frankly. There are a number of civil cases where they take the entire statute of 6B and say that materiality is a requirement to succeed under all of those. But that's not the case here. We have this one specific statute as in which even the government, for example, in the Ashman case, took the position that materiality isn't required. If they look at the whole of it, they say 6B requires materiality, and they're looking at the entirety of it, why do we presume that they're not competent enough to say, well, subsection A and subsection C require it, but subsection B doesn't, and they're all involved here. Those cases, Judge Jordan, all say that to succeed under the entire provision, and again, of course, subpart A has cheater defraud, subpart C has willfully deceive. So to succeed under all of them, you have to have this. It's a little bit like saying this is what you have to have for a home run under all three bases. We're talking about only getting to first base, the subpart B where materiality doesn't appear. I'm curious. You seem to have laid some emphasis on the fact that there's nothing in the Second Circuit, but there does seem to be a case, Sachs v. E.F. Hutton. It's at 789 F. Becker 105, and I didn't give you a heads up about this in advance, but they're applying 6B and saying it ought to be interpreted in light of the security statutes and saying that materiality matters. Right, but Sachs, as I read that case, again, talks about all of the, certainly all of the provisions. Hold on just a second. I'm having a hard time following you. You're saying all of the sections. You're not saying all of the sections include subsection B. Right. No, but what I'm talking about is it's to succeed under all of these subparts, A, whatever. I didn't ever read that to be saying if you want to say all three of them, then all three of them will end up requiring, then you'll end up having to deal with materiality because that includes A and C, and therefore materiality. I mean, isn't that a somewhat strange reading when they say 6B requires materiality? No, I submit that it's not. And, indeed, the government's position in Ashman, for example, the government's position in Ashman was that materiality is not required under this specific subpart. Moreover, I think it's important that just as in Saybolt and Wells, we don't have a common law term here with respect to this 6B section. Moreover, I think... Hold on, sir. Why don't you look at the in connection with piece for just a moment, all right? I'm sorry. The in connection part. This is a statute that requires there to be some false statement in connection with the sale of a commodity or something like that, right? There's that piece of it. Does that denote or at least imply that there needs to be some kind of an effort to influence the sale? No, Your Honor, it doesn't. This, I think, would perhaps be best analogized to a record-keeping requirement. The transaction is, if you will, almost jurisdictional in the sense that we want to keep complete and accurate records with respect to all commodities transactions. And this particular offense, the actual offense conduct here, is, I submit, the making of the false statement. Moreover, just to, Your Honor, if I can, to get back to the court's point with respect to the law in the Second Circuit. Before we do that, I want to ask you another thing about this in connection with. There's a recent Supreme Court case, as Len Jack, in which the... This just came out a very short time ago, June. And it was talking about procurement of immigration documents and that there was a false statement in the procurement. And the court in that case said the fact that it has to do with procurement tells you that there's a materiality piece to it because you're getting something there. Should that inform us in what we ask? This is in connection with materiality. With great deference, Judge Shorten, I would submit that Maslin-Jack, if I'm pronouncing that correctly, actually favors us and the government's position taken there because there were two statutes involved in Maslin-Jack, 18 U.S.C. 1015A, false statement in connection with a naturalization application. The government took the position, the Solicitor General before the Supreme Court, took the position in that case that, by the plain language of this, materiality was not a requirement. The other statute at issue was false procurement of naturalization, where in interpreting that statute without addressing the issue of materiality, the Supreme Court said that there has to be some impact. Right, that's a materiality requirement, right? No, but that's, it wasn't, I know there's, it wasn't done as a materiality requirement. But I think it's what I mean. You didn't use the word materiality, but the point of materiality is it has some influence, right? I mean, that's the point of materiality. But in this particular statute, materiality is not made an element of this, it's essentially, I would say, records keeping offense, and moreover, moreover there's no common law term that's utilized to import materiality. This is a statute, I submit, designed to preserve the integrity of records with respect to, records with respect to records. Even if they have nothing to do with anything. The position is, we just, we want all the I's dotted and the T's crossed. It has nothing to do with anything that's going on. It can be completely immaterial, but you can go to jail for a really long, long time and get a huge fine for saying something that's inaccurate, even if it has no bearing on anything. It's predicated, it's predicated, Your Honor, Judge Jordan, it's predicated with respect to, to be sure, with respect to an order, and there they want, and there they want, there they want record keeping to be accurate. But to answer my question, you say they want it to be accurate. Everybody likes accuracy, but we don't send people to jail for being inaccurate. We send them to jail for stuff that we consider to be really bad, right? So doesn't it have to be something more significant than, you know, you said you showed up on November 10th, you came here on November 12th, that's a false statement. They are sending you to jail. Your Honor, Congress has the power to do that, and it's done that in specific examples. 1014 in the Wells case is an example, a false statement in a loan application. 1015, a false statement in a naturalization application. That's what Congress has done, and that's, if you will, that we sought in crafting the guilty plea at issue here where materiality isn't a requirement. Moreover, I think it's important to note that in terms of how this case was charged in the Second Circuit, the information made no reference to materiality, made no reference to materiality. The assistant U.S. attorney in describing the elements of the crime specifically said that, specifically made no reference whatsoever to materiality. Can I ask you a question, Mr. Mosley? Yes, Your Honor. A couple of times you've mentioned the government's prior position in Ashman, and in your reply appendix you also point out the briefing and the mess in Jack's case. Yes, it is. Is your argument something of a judicial estoppel, that this is the government's position, this is what they ought to be, you know, this is where they should be stuck? Well, my point is- Are they down to that position? I certainly think that they are down to it, and I think what's important here is that the consistent application of a federal criminal statute is central to the administration of justice, and the government has taken the position both in Ashman and more generally in Nathal and Jack that you only get to materiality if you have the term itself or if you have a common law term, neither of which we have here. And that, I submit, is the critical part. If I may move on just very briefly to the issue of loss, as we urged in our brief, that has to be tethered to the actual offense conduct. It was stated in the information. Their loss was specifically stated as to both accounts, right? Right. But I think it's critical here, following Valancey, Judge Jordan, that what happened here, the plea colloquy, which you have to consult, he did not admit in the plea colloquy that there was a loss tethered to the offense conduct. Well, when you say tethered to the offense conduct, he pled guilty to the crimes charged in the information. In the information was a specific statement that an excess of $2 million loss was suffered by his firm. I mean, how much more tethered can you get then stating the loss amount in the charging document to which the person pleads guilty? But, as I think Valancey makes clear, pleading guilty to an information doesn't mean that you admit all of every fact that's alleged to you. But, counsel, your case, you cited a bunch of cases that appear to be helpful, but a lot of those cases, it's multiple counts, it may be difficult. This is a one counter. But I think, and I think it's critically important here to recognize that you have to look at the offense conduct. Otherwise, the government can simply load up an information with things that are not necessary to There's no dispute that the firm lost that amount of money, right? The question, Judge Jordan, is Just stick with me. Is there any dispute that they lost that amount of money? Let us accept that there was a loss, but the question is Not just a loss, that amount of money. Yes, but the issue is not the amount, Judge Jordan. Well, indeed it is, because you're saying it's not in excess of $10,000. No, no, no. What I'm saying is that the loss amount, whatever it is, has to be tethered to the offense conduct. And as the district court held in sentencing, adopting the government's position, this was relevant conduct. It wasn't the offense conduct. Is the false report. I understand your question. Thank you, counsel. Judge Nygaard, do you have anything? Can you hear me now? We can, yes. I have no questions. I'm just kind of dazzled by all this electronic stuff in front of me. Me too. Thank you. Good morning, Your Honor. Thank you. Keith McManus on behalf of the Respondent and the Attorney General. As Judge Jordan kindly points out, it's impossible to divorce subsection B from the other two anti-fraud provisions. Well, hold on. I wasn't pointing that out. I was asking a question. And let me say, it's not impossible, because didn't the government do exactly that in this case? There was a mischarging. You had to go back to Judge Pauly, whoever was the Assistant U.S. Attorney, and say, we had him plead guilty to the wrong thing. This is the statute we want, and the statute you picked was subsection B. You could have picked a number of things, but you picked that one, and you picked it a second time out at some embarrassment to the government, because you said it was, quote, the most relevant, unquote. If that's the case, if the government chooses on its second try, after a full-on plea colloquy to which it then has to say, we blew it, but this is what we really, really want, how can you say it's impossible to separate it? You did separate it and went back to get it. Let me make two points there, Your Honor. First, what I mean is it's impossible to divorce it as to the question of materiality, the question of the essential elements of all three subprovisions falling under this larger umbrella. How can that be impossible when the Congress set it up in three subsections? If they had wanted to make it all of a piece, they could have just put it all in one subsection, but they didn't. They made an A and a B and a C, and an A's got a fraud and a C's got a deceit, and B has got false statement and not a peep about fraud or deceit or materiality. That's true, Your Honor, but what it ignores is the premise and the reasons behind the enactment of these anti-fraud provisions. Now, in current, the Supreme Court referred to 6B broadly as an umbrella anti-fraud provision, which, quote, by its terms, makes it unlawful for any person to deceive or defraud any other person in connection with a futures contract. Congress knows how to say the words defraud and deceit, and they did them in separate subsections. That's what's interesting about this case. You want to treat 6B as if it's all together. Let me ask you this. How is it that the government can come in in some cases and say, false statement, that does not require materiality? When it suits you, you can say in a prosecution, false statement, we don't have to prove materiality to send you to jail. But when you come in here and it's important in order to make the government's position work to say materiality, it matters, oh, false statement, absolutely, absolutely has to be something material. Doesn't, you know, speak, if you would, to Mr. Mosley's argument, which I take to be, although he doesn't couch in these terms, as Judge Chigurhs noted, as sort of an estoppel argument. How can you have it both ways? How can you come in in the criminal context and say, well, materiality doesn't matter, but in the immigration context, you can come in and say, it's got to be material. A couple points, Your Honor. First of all, we are talking about the criminal context here, and that's what is so bizarre about this case. We are talking about these standards for prosecution in this case and others under 7B. We're no longer, unfortunately, we're sort of outside the realm of the INH for now, because we're talking about prosecution under 6B. Okay. Then if you want to say it's all about the criminal law, how come in the criminal law itself, you can say in one case, materiality has to be, and in another case, you can say materiality is irrelevant? I can't speak, Your Honor, for why our colleagues in Chicago more than 25 years ago took a position that seems inconsistent with the position taken by the board here. Well, they got two times, two different cases, right? What's the other one, Your Honor? Well, isn't it right in the appendix that your friend filed, the Nashman and Maslin-Jack? Maslin-Jack was not a 6B case, so let's be clear about that. But the other point, here is the brief. But the words false, you can't walk away from it. We're talking about the words false statement. Your assertion is the words false statement are a charge that requires inferiority, right? In the context of this provision, and I want to get back to this point, Your Honor, because it's an important one, and I'm getting there, but allow me to answer your question about Nashman and Maslin-Jack. In the Nashman brief, the government didn't analyze the case or analyze the statute with any supportive authority. It just made this statement that 6B or sub-B is not somehow a flawed provision. But it said also, and I'm quoting from the brief, Congress could also have criminalized or could not decide that a fact that a falsehood is in the trading record is materiality enough. This gets back to a point you made during the initial presentation, Your Honor, that because this has to be in connection with the commodities transaction, the materiality of all three provisions is inherent in the transaction itself. Well, when you say it's inherent, I mean, I'll repeat. I'm not making points up here, although it might sound like I am. I'm not trying to do that. I'm trying to press both of you on your positions and asking questions. And one of the things I want to press you on is why do you think the words false statement are suddenly different in this statute as opposed to in Wells and in Netter and, indeed, in this statute in Ashman? Why is it that in Wells, the Supreme Court of the United States can say there's nothing material, it's not a common law meeting, there's no statement about materiality in the statute, so it doesn't have a materiality element, which the government loved in those cases. But now in this you can say, oh, my gosh, it's material. Because as the Solicitor General pointed out in the same brief cited in Petitioner's reply, the court has implied a requirement of materiality where none was apparent on the face in only one circumstance. And that is where the common law definition of fraud, which requires a material misrepresentation, has been incorporated into the statute. And that is not what B says. A says fraud. C says deceit. B says neither. B says false statement. Are we to assume that Congress doesn't know what it's doing when it decides to break things into separate subsections? No, Your Honor, but what we're saying is that the absence of those buzzwords, which would connote or denote some sort of materiality requirement, is not definitive here. And here's why. The Fifth Circuit said in a case called Puckett that, again, when looking at 6B as a whole, the elements of an action under 6B of the CEA are derived from the common law action for fraud. This goes all the way back to the inception of the CEA in the 30s. The congressional intent here must be considered in the background of increasingly strong regulation designed to protect the integrity of the markets and the investors involved. Do we start with the words of the statute? Absolutely, Your Honor. Do we follow the pattern that the Supreme Court set in Wells and in Netter? That's just a question. Do we do that? Not necessarily, because you cannot analyze the statute and the plain meaning of the statute without understanding the background in which Congress legislated. So we don't start with the statute? No. We don't start with the language? Because that's what Wells says. Start with the language. See if you can see, does it talk about materiality? And you'd have to concede that it doesn't talk about materiality, right? Not explicitly, that's right. Right. And then it says, is there some common law reason to believe that the words at issue bear a meaning that Congress must have intended to incorporate? In subsection B, they use the words false statement. The very words that in Wells and later in Netter, quoting Wells, the Supreme Court says, don't carry a common law meaning of materiality, right? That's right. Alright. So your whole argument hinges on Congress really meant to get at fraud, and of course fraud does have a materiality point, right? That's absolutely right. Okay. And since the statute by its very structure has fraud separately in a different subsection, why does that argument you're making carry, why should that carry weight with us? Simply because they put cheater to fraud in another subsection or parsed out deception in another, doesn't mean that the false statements at issue here are not immaterial. And the reason is, I think the subprovisions, and there's no clear indication of this from the legislative history, but I think the individual subsections are meant to perhaps go at different types of conduct.  False reports. Whereas the other two provisions are much broader, presumably covering whatever cheating or defrauding means in that context. And the problem, this is often, even from its inception, these provisions are charged in the conjunctive together. It is very rare, and Mr. Wayne's case is one of the few that we've ever seen, where B is parsed out as its own. Aren't you arguing the losing proposition, the losing side in Wells here? Didn't Justice Stevens say, wait a second, we don't send people to jail for immaterial things. But the rest of the Supreme Court said, oh yeah, we do. We do that. Again, in the context. That's the argument they lost over a pretty vigorous and I thought pretty thoughtful dissent. But it came up short. Why does it have better traction now for you? Because of the context of the statute, Your Honor. This is not a criminal statute under 18 U.S.C., right? This is a regulatory provision enacted as part of the CEA to cover anti-fraud or to go after fraud in this commodities context. And so it was unique in that sense. And it takes it outside the realm of a case like Wells, or as, again, the Solicitor General did argue in the Simmons Act, there is an exception for statutes that incorporate these common law offenses of fraud and deceit, even without explicit language. Is there at least ambiguity here? Would you concede that where the words materiality or material don't appear in the statute and where the structure of the statute itself separates fraud and deceit away from the false statement subsection, and in light of precedent like Wells and that, is there at least ambiguity as to whether false statement in this context requires materiality? I think there is, Your Honor. But even though the government's taken a different position itself in the Ashman case. Again, Your Honor, that argument in Ashman with that qualification that I mentioned is not necessarily the most developed argument. It may not be the most developed, but I'm asking the question, if the government itself, you're just saying those guys blew it. If they blew it, doesn't that imply that there's at least some ambiguity? Absolutely. But that ambiguity is why it makes this court's review and the analysis here so critically important. And it's not just that you stop with the language of the statute. You have to look at the context, the legislative history of this particular provision, and what the myriad of other courts outside of Ashman have said about these fraud provisions. We can debate about that. I had a question for you on, you want us to look at the whole statute. I believe in Section 6BE2, materiality is actually mentioned. What is the effect of that? I'm sorry, which provision, Your Honor? I thought in 6BE2. 6BE2? I could have that wrong. I jotted it down, and I can't really read it that well. I'm sorry. Is it not in there? Okay, if it isn't, then forgive me. I'm not sure what 6BE2 is. Let me just double check. I've only got 8. I believe in 2. I'm sorry, Your Honor. I don't believe that. To be more clear, as far as we've seen in the case law and interpreting the statute on its face, the word materiality appears nowhere, not even in those other two provisions that require fraud or deceit. So it's absent from the statute in its entirety. But, again, see, the point, I think everyone assumes that it's okay to incorporate those types of common law principles, including materiality, into the other two provisions because they include those words. Let me ask you a real practical question, if that's okay. But go ahead, if you're not finished with the answer. I did want to finish by going back to a point that's involved here. You made a point earlier, Your Honor, about separating. I'm sorry, I beg your pardon. I don't mean to suggest that you made a point. You asked a question about why the government screwed up here and why they had to recharge. That distinction was not between subsections A, B, and C, to be clear. It was about subsections 1 and 2. Right. So it has nothing to do with picking one or the other. They do end up picking. I mean, they didn't charge 6B, A, through C. They charged 6B, B. Absolutely, absolutely. There's no place that choice would make sense to you. Right. Is there – assume just for the sake of argument that we thought the government was wrong here. Would that end the case? You seem to argue in a footnote that there's a need to remand for the BIA to look at this under the INA. Is that the position you're taking as a fallback position? And if it is, why would we give the government and the BIA a second bite at this apple When the INA piece of it was fully developed and argued at the agency and the government chose not to go with that INA argument, specifically directed the BIA away from it to the criminal statute, and that's the way the BIA decided to go? Well, Your Honor, I mean, I will say in hindsight, not that we had any involvement in that decision, but that might not have been the wisest choice. But because of the way the board decided the issue, the parties actually agreed. It's in a footnote in both briefs that remand would be the appropriate result if you disagree with the government's position on the criminal statute. And the reason for that is M-1, as you point out, even in the 6B context, M-1 likewise contains ambiguous phrases. It does include the words fraud and deceit, but the board has not yet weighed in on whether those provisions do require, even implicitly, the common law elements of – So we let them, in the first instance, construe their statute and then deal with it? My time has expired, Your Honor. Do you mind if I answer your question? Sure. That's right. But only if the court disagrees on the 6B point. Right, of course. But on that point, if I may just go over straightly, I want to make this observation because Petitioner does re-raise this issue in the reply brief, suggesting that the board would be bound on remand and can only rule one way. The premise underlying that argument is false. And I just want to point out what the court said in a case called Singh. The plain meaning of M-1, the court said, encompasses offenses that involve knowingly making false statements. And it easily disposed of a similar argument in a case called Mijuan, the underlying case before it went to the Supreme Court. Disposing of Petitioner's argument that fraud and deceit should be given their common law meaning. So if it was so easy, why did the government not want to argue that? Were you trying to avoid Kawashima? Not at all, Your Honor. I actually have no answer for that. I've spoken with DHS counsel. They could not tell me why that seemed to be the best approach to take. But nevertheless, here we are based on what the board did. Thank you. Thank you. Thank you. Just very briefly, to answer Judge Jacaraz's question, the statute 7 U.S.C. 6B subpart E little subpart 2 does in connection with contracts of sale and group or index of securities contain the language to make any untrue statement of a material fact. So Congress certainly knew how to add specifically materiality in the statute, and it didn't do so under the specific subpart to which Mr. So in our opinion, maybe the old espressio unius esclusio authoris. Absolutely, Your Honor. Absolutely. Always looking for one in those cases. Absolutely. I would also say just on another aspect of statutory construction, the in-connection language does not equate to materiality. Otherwise, the other provisions that say cheater, defraud, or willfully deceive, I submit would be rendered superfluous contrary to another provision, another rule of construction. It would be helpful if you would respond to Mr. McManus's argument. This is a regulatory and statutory scheme that doesn't get interpreted in a vacuum, and, indeed, that's what the Second Circuit itself, you've leaned pretty heavily on saying, oh, pay attention to the Second Circuit. In fact, the Second Circuit said, we don't look at this stuff in a vacuum. We look at it in connection with the securities laws. But he's got a point that you ought to address. But I think his point there is fundamentally wrong because we look here at the specific subpart under which Mr. Wang entered his guilty plea, and that subpart has neither materiality nor common law provision. Now, in terms of civil regulation, broadly, they're going to apply all of these statutory provisions as part of a regulatory statute, which I think underscores the fact that we're talking about accurate recordkeeping. But Mr. Wang, as part of a disposition on this case, pled guilty to a specific subsection, and you do not import into subpart B what is in subpart A or subpart C. Otherwise, all of those ---- Do we interpret a statute in light of its purpose? I mean, are we responsible to try to understand what Congress is getting at by reading things in isolation or by reading them in context? I think you have to read the specific language of the statute to start with. That's the absolute starting point. But do we read it in context? That's what I'm asking. Well, I think even if you adopt that position, Judge Sheridan, even if you adopt that position, you have to read it in the ---- B comes out as providing the purpose of an exacting requirement of proper recordkeeping, and it does serve the purpose, and it is a situation as in Wells and the other ---- where you can send a person to jail for not proper ---- for a false statement. Finally, I would just urge with respect to the cases that the government cites on remand, Neshalla and Singh, Neshalla involved mail fraud, wire fraud. Singh involved the bankruptcy statute, 28 U.S.C. 152, which has fraudulently as every other aspect of it. Do you agree that if we viewed the criminal statute the way you've urged, that we then should remand this matter to the BIA for them to make an interpretation of how the INA applies? Well, I think I would tend to agree with that, but to the point that the BIA has already said that deceit is a common law term which implies, which brings in materiality, and if you hold that materiality is not a necessary legal requirement here, I submit it would be rather a short decision by the BIA on remand. Well, they don't seem to think, though. They seem to think that if we sent it back that there's some shot that they would get a ruling from the BIA that the Immigration and Naturalization Act section that would be implicated would indeed mean that there's a requirement here. In short, unless I misunderstood you, I thought you were saying it would be a short remand because your side would win, but I think they think it would be a short remand because they would win. No, but they've already taken the position, well, the case here, the board, that deceit is a common law term, and deceit requires materiality as a common law term. If you find that there is no materiality here, then there's not much for the board to decide when it gets back, because they've already defined deceit. I see my time is up.  Thank you, Mr. Mosley. Thank you. Well, we'll take the case under advisement and thank counsel for their excellent briefs and argument today. If counsel are amenable, we'd like to greet you at sidebar.